UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JUNIOUS VITAL, DAMON DARBY, HERBERT HEARD, BILLY ROSE, JEROME JOHNSON, DAVID LANE, EDWARD JILES, DEWARREN BELLARD, | ) ) ) ) ) ) | Civil Action No. 4:12-cv-1357 |
| Plaintiffs, | ) ) | Judge Lee H. Rosenthal |
| v. | ) ) ) ) | |
| NATIONAL OIL WELL VARCO, | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION FOR NEW TRIAL**

1

## TABLE OF CONTENTS

Page

Index of Authorities ......................................................................................... ii

1.   Grounds for Motion ................................................................................ 1

2.   Prejudicial Error Occurred
     Due to Repeated Breach of
     in Limine Orders ................................................................................. 1

3.   NOV'S Reference to the EEOC
     Charges Was Inappropriate and
     Unduly Prejudicial ............................................................................... 3

4.   The Allegations Contained in the First
     Amended Complaint Should Not Have
     Been Treated  as Evidentiary Admissions ........................................... 5

5.   Reference to the  Bryant v, FMC
      Complaint Was Prejudicial Error........................................................ 7

6.   Attorney Misconduct Is Sufficiently
     Severe as to Merit a New Trial ............................................................ 10

7.   Conclusion ........................................................................................... 12

## INDEX OF AUTHORITIES

**Page**

1.    **CASES**

Dixon v. Int'l Harvester Co.,
(5th Cir.1985) 754 F.2d 573 ........................................................................ 12

Dugan v. EMS Helicopters, Inc.,
(10th Cir, 1990) 915 F.2d 1428 ..................................................................... 9

Hardy v. Johns-Manville Sales
Corp., (5th Cir. 1988) 851 F.2d 742 ............................................................. 8

In re Zonagen, Inc. Sec. Litig.,
(S.D. Tex. 2003) 322 F. Supp. 2d 764 ......................................................... 9

Keller v. United States,(7th Cir. 1995 )  58 F.3d 1194 ................................. 6

King v. Univ. Healthcare Sys., L.C.,
(E.D. La) 2009 U.S. Dist. LEXIS 133236 .................................................. 8

Martinez v. Bally's La., Inc.,
(5th Cir, 2011)  244 F.3d 474 .................................................................... 5, 6

Ramirez v. Norwood, (ND Miss)
2015 U.S. Dist. LEXIS 129234 .................................................................. 6

Salvatorie Studios, International v. Makos
(S. D. NY) 2001 U.S. Dist. LEXIS 11729 ................................................. 9

Sanchez v. Standard Brands,
Inc (5th Cir, 1970) 431 F.2d 455 ......................................................... 3, 4, 5

Smith v. Transworld Drilling
Co., (5th Cir, 1985)  773 F.2d 610 ............................................................ . 1

Thomas v. Texas Dep't of Crim.
Justice, (5th Cir, 2000)  220 F.3d 389 ........................................................ 3

Winter v. Brenner Tank, Inc.,
(5th Cir. 1991)  926 F.2d 468 ................................................................... 10

<u>2.</u>        <u>RULES OF COURT</u>

**<u>Federal Rules of Civil Procedure</u>**

**Rule 59** ............................................................................................................... 1

**<u>Federal Rules of Evidence</u>**

**Rule 401**.............................................................................................................. 8

**Rule 403** .......................................................................................................... 10

USDC/SDTX Local Rules

Appendix C, Rules of Courtroom Etiquette ............................................. 11

Appendix D, Guidelines for Professional Conduct ................................. 12

1. <u>**GROUNDS FOR MOTION**</u>

"**Rule 59** of the Federal Rules of Civil Procedure confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial  and the reliability of the jury's verdict. The rule does not specify what grounds are necessary to support such a decision but states only that the action may be taken "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."" <u>Smith v. Transworld Drilling Co.,</u> (5th Cir, 1985)  773 F.2d 610, 612-613. For present purposes,  a new trial may be made on grounds that the trial was unfair or that "prejudicial error was committed in its course." Id at 614.

2. <u>**PREJUDICIAL ERROR OCCURRED**</u>
<u>**DUE TO REPEATED BREACH OF**</u>
<u>**IN LIMINE ORDERS**</u>

Defendant NOV repeatedly violated this Court's orders on Plaintiffs' motions in limine.

Prior to trial, the Court granted Plaintiff's motions in limine 21 and 22, which precluded any reference to claims that were previously dismissed, or original claims that were no longer part of the lawsuit at trial.  Despite this ruling, Defense Counsel referenced dismissed claims over and over again during the course of the trial. Moreover, Defense Counsel repeatedly displayed portions of Plaintiffs' Amended Complaint that referenced the claims that were no longer part of the case.

Prior to trial, the Court also ruled that NOV could not make any reference to Plaintiffs' fee agreement with Counsel.  However, in direct violation of the Court's

order, Defense Counsel attempted to elicit testimony from Plaintiff Billy Rose concerning the scope of the Plaintiffs' fee agreement with Counsel. Specifically, Defense Counsel asked Plaintiff Rose to confirm that Plaintiffs' Counsel would only receive money if the jury rendered a verdict for Plaintiffs.

The Court also granted Plaintiffs' motions in limine 1 and 2, which sought orders that Defense Counsel could not make any statements that Plaintiffs were "in this for the money" or engaged in lawsuit abuse. Nonetheless, throughout the trial Defense Counsel repeatedly made statements that Plaintiffs "wanted millions of dollars" and filed a "frivolous lawsuit." Indeed, in Defense Counsel's closing argument he told the jury the lawsuit was filed because NOV would not "give in to this extortion."

The Court also granted Plaintiffs' motion in limine 20, which sought to preclude Defendant from arguing that it would be financially impacted by the outcome of the lawsuit. In deliberate disregard of this Court's ruling, Defense Counsel elicited testimony from its own witnesses concerning the possible financial ramifications of a Plaintiffs' verdict. For example, while examining witness Simon Guajardo, a current NOV manager, NOV's Counsel asked Mr. Guajardo whether his department had a budget. Defense Counsel also elicited testimony from Mr. Guajardo to the effect that a verdict for Plaintiffs would not only financially impact NOV, but also that it would cause NOV to make budget cuts, which would result in employee layoffs.

The Court also allowed Defendant's motion in limine 2, which precluded either side from mentioning the size or location of trial Counsel's law firms. Specifically, the

2

Court stated at the pretrial conference: "Neither notorious place, New Orleans nor San Francisco, will ever be mentioned in front of this jury."  Despite the Court's ruling, Defense Counsel made every possible effort to highlight for the jury where Plaintiffs' Counsel's office is located.  Defense Counsel mentioned in when examining witness. Defense Counsel also blew up Plaintiffs' Counsel's letterhead and displayed on the screen in front of the jurors.

3.    **NOV'S REFERENCE TO THE EEOC CHARGES**
      **WAS INAPPROPRIATE AND UNDULY PREJUDICIAL**

        NOV's utilization of the EEOC administrative complaints to impeach the Plaintiffs was inappropriate.

        A Title VII claim need not track the contours of the administrative complaint initially filed with the United States Equal Employment Opportunity Commission ("EEOC"). **Thomas v. Texas Dep't of Crim. Justice**, (5th Cir, 2000)  220 F.3d 389, 395 ["The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."] **Thomas** itself is grounded on the landmark Fifth Circuit case of **Sanchez v. Standard Brands. Inc** (5th Cir, 1970) 431 F.2d 455, which taught that:

> A charge of discrimination is not filed as a preliminary to a lawsuit.
> On the contrary, the purpose of a charge of discrimination is to
> trigger the investigatory and conciliatory procedures of the EEOC.
> Once a charge has been filed, the Commission carries out its
> investigatory function and attempts to obtain voluntary compliance
> with the law. Only if the EEOC fails to achieve voluntary compliance
> will the matter ever become the subject of court action. Thus it is
> obvious that the civil action is much more intimately related to the
> EEOC investigation than to the words of the charge which originally

3

triggered the investigation.  Id at 466.

In <u>Sanchez</u>, the original EEOC charge only alleged discrimination based upon sex.  The resulting complaint alleged discrimination based upon national origin and race.. The District Court granted a motion to dismiss on the grounds that the EEOC charge made no mention of race or national origin.  Id at 460.

In support of the District Court's decision in <u>Sanchez</u>, the employer, among other things, objected that the amended charge contained facts distinct from those found in the initial charge and the judicial complaint contained additional factual matter. The Fifth Circuit rejected this contention, noting that EEOC administrative remedy is a "lay initiated process," "it would be out of keeping with the Act to import common-law pleading niceties to [the charge of discrimination] or in turn to hog-tie the subsequent lawsuit to any such concepts." Id at 465.  The <u>Sanchez</u> Court specifically rejected the employer's arguments regarding the factual variance between the charge and the judicial complaint:

> Standard Brands, however, insists that plaintiff's judicial complaint contains allegations which are beyond the scope of either charge of discrimination. This argument appears to be premised on the assumption that every particular fact alleged in the judicial complaint must have a direct counterpart in the charge of discrimination. For the reasons hereinafter given, we decline to exact such specific articulation and minuscule particularity in the context of Title VII. We conclude that the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may fol low. Id at 465.

Thus, 45 years of Fifth Circuit precedent  stands for the proposition that EEOC

4

administrative charges are not to be treated as pleadings or to be strictly construed. It follows, then, that attempts in a trial court to impeach a Title VII litigant with the original administrative charge are not permissible.  To do so would be to "hog tie" the subsequent law suit in the manner disapproved by <u>Sanchez</u>.

4.    <u>THE ALLEGATIONS CONTAINED IN THE FIRST
      AMENDED COMPLAINT SHOULD NOT HAVE BEEN TREATED
      AS EVIDENTIARY ADMISSIONS</u>

NOV sought to impeach the testimony of several Plaintiffs through allegations contained in their first amended complaint.  That pleading was not verified by any of the plaintiffs nor did they draft any portion of it.  Nonetheless there was the supposition that if the Plaintiffs' testimony in trial varied or was inconsistent with that in the first amended complaint, it would reflect poorly upon their credibility.   The legal rationale for the use of the first amended complaint in that fashion was that any inconsistent statements in the pleading were, by definition, judicial admissions. Whether or not that was the case, the problem here is that in trial they were treated as evidentiary admissions.

'A judicial admission is a formal concession in the pleadings or stipulations by a party or Counsel that is binding on the party making them. A judicial admission is not itself evidence. A judicial admission has the effect of withdrawing a fact from contention. For instance, a statement made by Counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact. <u>**Martinez v. Bally's La., Inc.,**</u> (5th Cir, 2011)  244 F.3d 474,

476.

By contrast, an ordinary evidentiary admission is "merely a statement of assertion or concession made for some independent purpose," and it may be controverted or explained by the party who made it." Id at, 476-477.

The effect of a judicial admission is to remove issues from legal dispute. In other words, a party is not allowed to present evidence that contradicts prior judicial admission, unless relieved by the court of the admission. "A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party." <u>Keller v. United States</u>,(7th Cir. 1995 ) 58 F.3d 1194, 1199 n. 8 (quoting John William Strong, McCormick on Evidence, § 254 at 142 (1992)). Judicial admissions have often been used "as a judicial housekeeping tool of sorts, such as to bind parties to facts agreed to in the pre-trial order." <u>Ramirez v. Norwood,</u> (ND Miss) 2015 U.S. Dist. LEXIS 129234*39.

If NOV believed the Plaintiffs here made judicial admissions in the First Amended Complaint, it should have filed an in limine motion to preclude presentation of any contrary evidence by the Plaintiffs. In other words, the use of any judicial admissions would have been to remove issues from contention.

NOV used allegations in the pleadings as *evidentiary* admissions. The Plaintiffs were confronted with allegations in the First Amended Complaint that NOV contended contradicted their trial deposition testimony in much the same way as witnesses are impeached by conflicting deposition testimony or interrogatory responses. On the one

6

hand, this is not, of course, how a judicial admission is to be used in a trial and, on the other, the statements in the complaint were not testimony of the Plaintiffs, sworn or otherwise, but were written by their lawyers and had, by the time of trial, been superceded by the summary judgment order and the pretrial order. Nonetheless, by using the allegations in the First Amended Complaint to impeach the Plaintiffs, NOV created the impression that Plaintiffs testimony was inconsistent or untruthful.

This impression of untruthfulness or inconsistency created through use of the judicial complaint to impeach testimony was unfairly prejudicial, as defined by FRE 403, because it was founded upon a false premise that the judicial complaint NOV used to impeach Plaintiffs testimony embodied sworn testimony.

NOV should not have been allowed to use the First Amended Complaint to impeach Plaintiffs testimony. NOV had ample means to impeach the testimony of Plaintiffs if it felt it had to . Those means included deposition testimony, interrogatory responses, summary judgment declarations etc. On the other hand, if NOV felt there were clear judicial admissions in the pleadings, it could have sought in limine relief. What it actually did, however, was to improperly represent that the First Amended Complaint was sworn testimony when it was obviously no such thing and/or that the Plaintiffs were somehow the authors of it, when they were not.

5.   **REFERENCE TO THE BRYANT v FMC
      COMPLAINT WAS PREJUDICIAL ERROR**

Plaintiffs strenuously objected to use of the complaint in the Bryant v. FMC matter to impeach their testimony. This Court allowed NOV'S trial Counsel to freely

question from that pleading and to show the jury a powerpoint slide comparing the contents of the FMC pleading and the amended compliant in this case. In fact, NOV's trial Counsel quoted extensively from the Bryant complaint when he was questioning Plaintiffs.

One significant defect in such evidence is that it holds the client responsible for the attorney's litigation strategy. This is an obvious unfairness given that pleadings in lawsuits are customarily drafted by lawyers and not by clients. Litigation strategy of a party's lawyer is, of course, irrelevant. **King v. Univ. Healthcare Sys., L.C.,** (E.D. La) 2009 U.S. Dist. LEXIS 133236*8.

A second defect is that evidence of the content of the pleading in a prior case is simply not relevant. In other words, any similarity between the language of the complaint in the Bryant matter and the first amended complaint in the present lawsuit "is of [no] consequence in determining the action." **F.R.E. Rule 401.**

Had NOV offered as evidence a complaint or pleading by one of the plaintiffs alleging identical or similar allegations of discrimination against another employer, there is authority that particular pleading would have been admissible; "Factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party." **Hardy v. Johns-Manville Sales Corp.**, (5th Cir. 1988) 851 F.2d 742, 745, Likewise, "statements a party makes in pleadings in one case that are inconsistent with the positions a party takes in another case may be admissible as admissions against interest or for impeachment. [Citing

8

<u>Dugan v. EMS Helicopters, Inc.</u>, (10th Cir, 1990)  915 F.2d 1428, 1431-1432]" <u>In re</u>

<u>Zonagen, Inc. Sec. Litig.</u>,  (S.D. Tex. 2003) 322 F. Supp. 2d 764, 783.

However, it is quite a different proposition to admit into evidence statements or

allegations made in a separate lawsuit involving completely different litigants merely

because one side was represented by the lawyers in the present case.

Had NOV sought discovery pertaining to documents pertinent to the Bryant v.

FMC matter there is little question that it would not have been discoverable on grounds

of relevance. <u>Salvatorie Studios, International v. Makos</u> (S. D. NY) 2001 U.S. Dist.

LEXIS 11729* 2-3.

The third defect with admission into evidence, albeit for impeachment purposes,

of the Bryant complaint is that it was unduly prejudicial and it created a confusion of

the issues.

The prejudice is plainly unfair as there was a possibility, perhaps a likelihood,

that the jury in this case decided against the Plaintiffs on the basis of a factor completely

unrelated to any issue properly before it.  Whether or not the language of the Bryant

complaint is similar to that of the first amended complaint here was not an issue

properly before the jury.

The Plaintiffs, of course, recognize that one of the defenses NOV asserted was

that the Plaintiffs had manufactured or falsified their claims of race harassment.  NOV

had ample tools at its disposal to convince the jury of this contention, including the

facebook message from Vital to Pam Jiles, the testimony of various NOV witnesses and

of the Plaintiffs themselves. Reading from the compliant filed in another, unrelated lawsuit and referencing it on a powerpoint slide for the jury, however, goes beyond legitimate defense into the territory of unfair prejudice as the similarities in the verbiage in the two complaints were being used against the Plaintiffs - basically Defendant was invoking the litigation strategy of the Plaintiffs' lawyers against their clients.

NOV contends it was the factual similarities between the two complaints that justified utilization of the Bryant complaint. However, the inquiry was not limited by NOV to supposed factual similarities. For instance, NOV compared the prayer of both pleadings in which Plaintiffs' Counsel alleged a dollar value to the lawsuit. The prayer to a judicial complaint is by definition not factual but reflects the work product or litigation strategy of the lawyer who drafted it. By comparing the prayers of both complaints, NOV was invoking the litigation strategy of the Plaintiffs' lawyers. This is precisely the sort of extraneous prejudice **Rule 403** was designed to prevent.

6.   **ATTORNEY MISCONDUCT IS SUFFICIENTLY SEVERE AS TO MERIT A NEW TRIAL**

Attorney misconduct can warrant a new trial in certain circumstances. **Winter v. Brenner Tank, Inc.,** (5th Cir. 1991)  926 F.2d 468, 473.

Here, there was a substantial amount of misconduct on the part of Defense Counsel, John Zavitsanos. In addition to the breach of the motions in limine referenced in this motion, we have a repeated pattern of questioning witnesses that were, in effect, arguments and speeches, with brief questions tacked on at the end for the sake of appearance. While Plaintiffs' Counsel objected to many of these, there was no way that

10

they could object to all of them without obstructing the flow of evidence. The argumentative questions were, when certain Plaintiffs were being questioned, coupled with a raising of the voice.

The most obvious form of this misconduct occurred when the Plaintiffs' economic expert, Dr. Kenneth Lehrer, testified. When Mr. Zavitsanos took over the examination, the questioning quickly degenerated into what can only be characterized as a verbal brawl, with Zavitsanos yelling at Dr. Lehrer. Zavitsanos cross-examination was not limited to challenging the contents of Lehrer's report but dredged up unrelated matters, some of which were quite inflammatory and most of which were irrelevant to the testimony at hand but seemingly more germane to apparently deep seated personal quarrels between the two men. The verbal brawl persisted for several minutes before order was finally restored. .

In closing argument Zavitsanos engaged in broadside attack on Plaintiffs' lead trial Counsel. That attack was especially egregious in light of the repeated disparagement of the Alioto Law Firm throughout the trial.

The conduct of Zavitsanos was in blatant breach of the applicable local rules.

For instance, the repeated attacks on Plaintiffs' Counsel, her law firm and the expert witness violated Rule N of the Rules on Courtroom Etiquette. That rule admonishes lawyers to:

> Avoid disparaging remarks and acrimony toward Counsel, and discourage ill will between the litigants. Counsel must abstain from unnecessary references to opposing Counsel, especially peculiarities. USDC/SDTX Local Rules (2000) Appendix C

11

P. 32.

This was not the only rule of conduct violated by Zavitsanos and his co-Counsel .

For instance, consider this Rule from the Guidelines for Professional Conduct;

> Effective advocacy does not require antagonistic or obnoxious behavior
> and members of the Bar will adhere to the higher standard ofconduct
> which judges, lawyers, clients, and the public may rightfully expect.
> Guidelines for Professional Conduct, Rule K, USDC/SDTX Local Rules
> (2000) Appendix D  P.  34.

The Plaintiffs are not pointing to isolated instances but to repeated conduct

throughout the trial, which given its repetition, cannot but have had a profoundly,

unfair effect on the consideration of the Plaintiffs' case. "To justify a reversal based on

improper comments of Counsel, the conduct must be such as to gravely impair the calm

and dispassionate consideration of the case by the jury." **Dixon v. Int'l Harvester Co.,**

(5th Cir.1985) 754 F.2d 573, 585.   That is exactly what happened in ths case. The verdict

should be vacated and a new trial ordered.

7.    **CONCLUSION**

For all the reasons listed above, the Plaintiffs' motion for a new trial should be

granted.

Date: October 13, 2015

Respectfully submitted

/s/ Steven L. Robinson

_____

Angela M. Alioto, Esq.
(Attorney-in-Charge)
CA Bar  No. 130328
SDTX No. 957811

12

Steven L. Robinson, Esq.
CA Bar No. 116146
SDTX No. 966699
Angela Mia Veronese, Esq.
CA Bar No. 269942
SDTX No. 1531437
Matthew J. Wayne
CA Bar No. 283897
SDTX No. 1751326

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiffs Motion for New Trial has been served upon Defendants via the Court's Electronic Notification/Filing System:

Christopher E. Moore, Esq.
Christine M. White, Esq.
Jennifer L. Englander, Esq.
Monique R. Gougisha-Doucette

Ogletree, Deakins, Nash, Smoak
& Stewart, P.C.
One Shell Square
701 Poydras St., Suite 3500
New Orleans, LA 70139

John Zavitsanos, Esq

Electronic Mail:
Christopher.Moore@ogletreedeakins.com
Christine.White@ogletreedeakins.com
Jennifer.Englander@ogletreedeakins.com
Monique.Gougisha@ogletreedeakins.com
jzavitsanos@azalaw.com,

This 13th Day of October 2015

/s/   Steven L. Robinson