### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JUNIOUS VITAL, DAMON DARBY, HERBERT HEARD, BILLY ROSE, JEROME JOHNSON, DAVID LANE, EDWARD JILES, DEWARREN BELLARD, | ) ) ) ) ) | Civil Action No. 4:12-cv-1357 |
| Plaintiffs, | ) ) | Judge Lee H. Rosenthal |
| v. | ) ) ) ) | |
| NATIONAL OIL WELL VARCO, | ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MOTION FOR NEW TRIAL

## TABLE OF CONTENTS

Index of Authorities .........................................................................................................

1.   Introduction ....................................................................................................   1

2.   Procedural Background ...............................................................................   1

3.   Summary of Argument ................................................................................   1

4.   Grounds for New Trial Motion ...................................................................   2

5.   Plaintiffs Were Substantially
     Prejudiced by a Fraud upon the Court ......................................................   3

     A.   Injecting the Bryant Complaint into
          the Record .............................................................................................   3

     B.   The Bryant Complaint is Inadmissible
          for Three Separate, Interrelated Reasons .......................................   6

     C.   Any Similarities Between the Two Law
          Suits Were Not Highly Probative .....................................................   9

     D.   Reading of the BRYANT v. FMC
          Complaint Into the Record Merits
          Reversal .................................................................................................   12

6.   Attorney Misconduct Is Sufficiently
     Severe as to Merit a New Trial ..................................................................   13

7.   NOV'S Reference to the EEOC
     Charges Was Inappropriate and
     Unduly Prejudicial .......................................................................................   15

8.   The Allegations Contained in the First
     Amended Complaint Should Not Have
     Been Treated  as Evidentiary Admissions ...............................................   17

7.   Conclusion .....................................................................................................   20

# INDEX OF AUTHORITIES

**Page**

## 1.   CASES

**Dixon v. Int'l Harvester Co.,**
(5th Cir.1985) 754 F.2d 573 ............................................................................. 15

**Dugan v. EMS Helicopters, Inc.,**
(10th Cir, 1990)  915 F.2d 1428 ......................................................................... 7

**Hardy v. Johns-Manville Sales**
**Corp.,** (5th Cir. 1988) 851 F.2d 742 ................................................................. 7

**Henry v. Corpcar Servs. Houston,**
**Ltd.,**(5th Cir, January 27, 2015)
 2015 U.S. App. LEXIS 1208 ............................................................................. 10

**Hollybrook Cottonseed Processing,**
**L.L.C. v. Am. Guar. & Liab. In...,** 772 F.3d 1031 ............................................. 3, 12

 **In re Zonagen, Inc. Sec. Litig.,**
(S.D. Tex. 2003) 322 F. Supp. 2d 764 ..................................................................

**Jones v. UPS Ground Freight,**
(11th Cir. 2012) 683 F.3d 1283 .......................................................................... 11

**Kassel v. Gannett Co.,** (1st Cir, 1989) 875 F.2d 935 .................................................. 7

 **Keller v. United States,**(7th Cir. 1995 )  58 F.3d 1194 .......................................18

**King v. Univ. Healthcare Sys., L.C.,**
(E.D. La) 2009 U.S. Dist. LEXIS 133236 ................................................................ 8

**Martinez v. Bally's La., Inc.,**
(5th Cir, 2011)  244 F.3d 474 ........................................................................... 18

**McGinest v. GTE Service**
**Corp.** (9th Cir. 2004) 360 F.3d 1103 .............................................................. 10

**Mullen v. Princess Anne Volunteer**
**Fire Co.,** (4th Cir. 1988) 853 F.2d 1130 ........................................................... 8

**Ramirez v. Norwood,** (ND Miss)
2015 U.S. Dist. LEXIS 129234 ................................................................ 18

**Ross v. Stahl** (WD NC, 1980) 502 F.Supp. 107 ....................................... 12

**Salvatorie Studios, International v. Makos**
(S. D. NY) 2001 U.S. Dist. LEXIS 11729 ............................................... 8

**Sanchez v. Standard Brands,**
**Inc** (5th Cir, 1970) 431 F.2d 455 ......................................................... 16, 17

**Smith v. Transworld Drilling**
**Co.,** (5th Cir, 1985)  773 F.2d 610 ........................................................ 2

**Tademy v. Union Pacific Corporation**
(10th Cir. 2008) 520 F.3d 1149 .............................................................. 11

**Thomas v. Texas Dep't of Crim.**
**Justice,** (5th Cir, 2000)  220 F.3d 389 .................................................. 15

**Winter v. Brenner Tank, Inc.,**
(5th Cir. 1991)  926 F.2d 468 ................................................................. 13

<u>2.</u>    RULES OF COURT

**Federal Rules of Civil Procedure**

    Rule 59 ................................................................................... 1, 2

    Rule 60 ................................................................................... 1

**Federal Rules of Evidence**

    Rule 401................................................................................. 7

    Rule 403 ................................................................................ 8, 9, 19

USDC/SDTX Local Rules

Appendix C, Rules of Courtroom Etiquette ................................................................ 14

Appendix D, Guidelines for Professional Conduct ................................................. 15

1.     **INTRODUCTION**

This is a motion for a new trial pursuant to FRCP 50.

This motion is founded upon a misrepresentation to the Court by NOV's trial

counsel.  Based upon that misrepresentation, the Court allowed in evidence a lawsuit

from an unrelated case, to the severe prejudice of the Plaintiffs. Under these

circumstances, a new trial is justified.

2.     **PROCEDURAL BACKGROUND**

This motion is brought pursuant to the Court's Minute Order of October 15, 2015

(Docket No.  201), which vacated the 10 day limit for post trial motions stated in an

earlier minute order of this Court (Docket No. 164)  That Minute Order appeared to be

in response to the Plaintiffs' Rule 60(B) Motion for Relief filed on October 9, 2015

(Docket No. 188). The Plaintiffs understand the second minute order as permitting a full

motion for New Trial as permitted under FRCP 59.[1]

3.     **SUMMARY OF ARGUMENT**

The fact that the attorney for the Defendant was allowed to read large portions of

a lawsuit from a separate case involving completely different parties (Bryant v. FMC,

SDTX Case No. 04:08-CV-03744).  The only thing in common with the present lawsuit

was the fact that the same lawyers represented the plaintiffs in both lawsuit.  This

---

[1] "ORDER amending minute entry entered on October 6, 2015. (Docket Entry No. 164). The Minute Entry entered on October 6, 2015, is amended only to the extent of clarifying that the 7-day deadline for the post-verdict motions does not preclude the plaintiffs from filing a Rule 50, 59, or 60 motion after the judgment is entered and within the deadlines set by the Federal Rules of Civil Procedure."

injected irrelevant matter into the record and was unduly prejudicial to the Plaintiffs.

Particularly egregious is that Counsel for NOV blatantly misrepresented to the Court

the purpose for which he intended to use the Bryant v. FMC complaint. Based upon that

misrepresentation, this Court allowed that document into evidence and as a result of

that misrepresentation, Counsel for NOV explicitly used that document for the specific

purpose he promised not to, This was fraud upon the Court.

The Plaintiffs' also move for a new trial based on the misconduct of Opposing

Counsel based upon his behavior in the court room and based upon his utilization of

trial strategy of attacking Plaintiffs' counsel.

This motion will also be based upon prejudicial error caused by the improper

usage of EEOC Administrative Complaints in the cross-examination of Plaintiffs' + and

upon the improper use of the First Amended Complaint in cross-examining the

Plaintiffs.

4.    **GROUNDS FOR NEW TRIAL MOTION**

"**Rule 59** of the Federal Rules of Civil Procedure confirms the trial court's historic

power to grant a new trial based on its appraisal of the fairness of the trial   and the

reliability of the jury's verdict. The rule does not specify what grounds are necessary to

support such a decision but states only that the action may be taken "for any of the

reasons for which new trials have heretofore been granted in actions at law in the courts

of the United States."" **Smith v. Transworld Drilling Co.,** (5th Cir, 1985) 773 F.2d 610,

612-613. For present purposes,  a new trial may be made on grounds that the trial was

unfair or that "prejudicial error was committed in its course." Id at 614.

When a District Court decides a motion for new trial based on "the submission

of prejudicial information to the jury, the district court must decide whether the error is

harmless by assessing whether "'the error did not influence the jury, or had but very

slight effect.. [citing, inter alia,   Kotteakos v. United States, (1946) 328 U.S. 750, 764]."

Hollybrook Cottonseed Processing. L.L.C. v. Am. Guar. & Liab. In..., 772 F.3d 1031,

1034.

5.    **PLAINTIFFS WERE SUBSTANTIALLY**
      **PREJUDICED BY A FRAUD UPON THE COURT**

      A.    **Injecting the Bryant Complaint into**
            **the Record**

The stated reason NOV's counsel wanted to use the complaint in the Bryant v.

FMC case was for impeachment, but a very specific form of impeachment:

> He said he doesn't know about it. I want to impeach him
> and show that he did know about it. *And it's based on the*
> *overwhelming --overwhelming factual similarities.*
> September 29, 2015, Reporter Transcript P.  12:1-5.

Mr. Zavitsanos, counsel for NOV,  said he intended to impeach Mr. Vital's

testimony solely by showing the factual similarities between the two lawsuits.  In other

words, no evidence was presented of Mr. Vital saying he had read the Bryant complaint

or that he had talked to the Bryant plaintiffs.

The Court allowed the questioning for this purpose:

> --I understand that that is the defense theory. The question
> is the familiarity with the  allegations. Sept 29, 2015, RT.  12:6-8.

3

The Court specifically allowed NOV Counsel to inquire as to the specifics of the Bryant v, FMC matter:

> I say he can to the extent of showing the relationship, similarity of them, the allegations, to this case; and you can respond by asking questions about your client's familiarity with the differences. Sept 29, 2015, Transcript P.  12:18-22.

Plaintiffs' counsel objected that inquiry into the factual similarities between this matter and the Bryant case was making her law firm itself the issue. Id at P. 6:25-7: 8. Defense Counsel represented, at the Court's request, that the Alioto Law Firm itself was not the subject of his client's defense. Rather, he was claiming that the Plaintiffs themselves, "Mr. Vital in particular" had contrived their lawsuit based solely on the Bryant complaint.  Id at 7:11-8:4.

In fact, in closing argument Zavitsanos did precisely what he promised the Court he would not do, he accused Plaintiffs' counsel of fabricating the lawsuit and he based this claim on what he claimed were the similarities between the two lawsuits. October 5. 2015, Reporter Transcript P. 52:8-15.

In practice, what happened  was that NOV's lawyer examination was simply to read portions of the  Bryant v. FMC Complaint into the record.

NOV's counsel established that racial slurs of "nigger:  were alleged in the Bryant v. FMC matter, as they are in this matter. Sept  29, 2015, RT 19:9-19.  Also that the slur "monkey" was used in the Bryant matter while that slur was also used in this matter. Id at P. 19:20-21:4.  That Caucasian supervisors called African American

4

employees "boy" in the Bryant matter as well as the present case. Id at 21:14-22:4.
NOV Counsel then pointed out that in Bryant v. FMC and in the present lawsuit there
were allegations of racist jokes regarding "monkeys" and sports. Id at 22:2-23:15.
Attention was drawn to Vital's testimony that manager Evans thought the gorilla
picture was a "joke" and an allegation in the Bryant complaint, where an HR manager
referred to a racial slur as a "joke." Id at 39:9-40:20.

Counsel for NOV noted that in both cases there were allegations of racial graffiti
(Id at 23:19-24:10) and allegations of hangman's nooses in both cases, albeit multiple,
physical hangman's nooses in Bryant while here there were only graphic
representations of nooses and second hand information pertaining to nooses. Id at
24:22-25:2 & 25:20-26:5.

Reference was made to allegations of swastikas in both cases (Id at 27:22-28:1 & 29:11-
18) the wearing of confederate clothing. (Id at 29:19-30:8) and racially motivated
grumbling about music associated with African American. Id at 31:5- 17. Defense
Counsel also compared allegations in both cases of African Americans being required to
work while Caucasian coworkers were not (Id at 31:18-32:22) and that less qualified
Caucasians were promoted in favor of African Americans, (Id at 32:23-33:12) and denial
of training opportunities, (Id at 35:7-36:14). Defense Counsel also pointed out that there
were allegations in the Bryant complaint and the present lawsuit about discriminatory
write ups. Id at 36:17-37:12. NOV Counsel also referred to an allegation in the Bryant
complaint of a plaintiff working out of class and comparing it Vital's own allegation. Id

5

at 37:18-38:12.

However, aside from the facebook message between Vital and Pam Jiles in which the Bryant v. FMC "verdict" was referenced, the *sole* basis of NOV's defense was the similarity of the complaints between this matter and Bryant v. FMC. Given that there was no evidence that Vital had ever read the Bryant lawsuit, the exercise utilized by Defense Counsel was little different than simply reading the Bryant lawsuit into the record.

### B. The Bryant Complaint is Inadmissible for Three Separate, Interrelated Reasons

Plaintiffs strenuously objected to use of the complaint in the Bryant v. FMC matter to impeach their testimony. This Court allowed NOV's trial Counsel to freely question from that pleading and to show the jury a powerpoint slide comparing the contents of the FMC pleading and the amended compliant in this case. In fact, NOV's trial Counsel quoted extensively from the Bryant complaint when he was questioning Plaintiffs.

One significant defect in such evidence is that it holds the client responsible for the attorney's litigation strategy. This is an obvious unfairness given that pleadings in lawsuits are customarily drafted by lawyers and not by clients. There was no showing that Vital had drafted the NOV complaint.[2]

---

[2] Had evidence existed that Vital in fact drafted the complaint or the amended complaint in the present lawsuit, questioning him about the purported similarities between the present lawsuit and the Bryant complaint could have been permissible to determine whether he modeled his claims on the allegations in the Bryant matter.

Litigation strategy of a party's lawyer is, of course, irrelevant. **King v. Univ.**

**Healthcare Sys., L.C.,** (E.D. La) 2009 U.S. Dist. LEXIS 133236*8. As shown above, NOV's

impeachmend consisted solely of comparing the contents of the Bryant complaint to the

present lawsuit,  Plainly, the drafting of a pleading is the responsibility of a lawyer and

it can be said, without peradventure, that choosing which facts to emphasize and which

to down play or remove are quintessential parts of a lawyer's strategy.

A second defect is that evidence of the content of the pleading in a prior case is

simply not relevant. By itself,  the similarity between the language of the complaint in

the Bryant matter and the first amended complaint in the present lawsuit "is of [no]

consequence in determining the action." **F.R.E. Rule 401.**

Had NOV offered as evidence a complaint or pleading by one of the plaintiffs

alleging identical or similar allegations of discrimination against another employer,

there is authority that particular pleading would have been admissible; "Factual

allegations in the trial court pleadings of a party in one case may be admissible in a

different case as evidentiary admissions of that party." **Hardy v. Johns-Manville Sales**

**Corp.,** (5th Cir. 1988)  851 F.2d 742, 745, Likewise, "statements a party makes in

pleadings in one case that are inconsistent with the positions a party takes in another

case may be admissible as admissions against interest or for impeachment. [Citing

**Dugan v. EMS Helicopters, Inc.,** (10th Cir, 1990)  915 F.2d 1428, 1431-1432]" **In re**

---

Pleadings or briefs written by pro se litigants may be admissible when such documents
written by lawyers are not. See **Kassel v. Gannett Co.,** (1st Cir, 1989) 875 F.2d 935, 952
fn. 1.

**Zonagen, Inc. Sec. Litig.,** (S.D. Tex. 2003) 322 F. Supp. 2d 764, 783.

However, it is quite a different proposition to admit into evidence statements or allegations made in a separate lawsuit involving completely different litigants merely because one side was represented by the lawyers in the present case.

Significantly, had NOV sought discovery pertaining to documents pertinent to the Bryant v. FMC matter there is little question that it would not have been discoverable on grounds of relevance. **Salvatorie Studios, International v. Makos** (S. D. NY) 2001 U.S. Dist. LEXIS 11729* 2-3.

The third defect with admission into evidence of the Bryant complaint is that it should have been excluded under **Federal Rule of Evidence, R 403**, which provides, in pertinent part, that "[relevant] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

"Unfair prejudice," for purpose of Rule 403 "...[I]s, "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." **Mullen v. Princess Anne Volunteer Fire Co.,** (4th Cir. 1988) 853 F.2d 1130, 1133

The prejudice here is plainly unfair as there was a possibility, perhaps a likelihood, that the jury would decide the case against the Plaintiffs on the basis of factors completely unrelated to any issue properly before it - the similarity of the allegations in this case and those in Bryant v. FMC.

8

The Plaintiffs, of course, recognize that one of the defenses NOV asserted was that the Plaintiffs had manufactured or falsified their claims of race harassment. NOV had ample tools at its disposal to convince the jury of this contention, including the facebook message from Vital to Pam Jiles, the testimony of various NOV witnesses and of the Plaintiffs themselves.

Reading from the compliant filed in another, unrelated lawsuit and referencing it on a power point slide for the jury, however, goes beyond legitimate defense into the territory of unfair prejudice as the similarities in the verbiage in the two complaints were being used against the Plaintiffs - basically Defendant was invoking the litigation strategy of the Plaintiffs' lawyers against their clients.

NOV contends it was the factual similarities between the two complaints that justified utilization of the Bryant complaint. However, the inquiry was not limited by NOV the factual matter in the Bryant complaint. For instance, NOV compared the prayer of both pleadings in which Plaintiffs' Counsel alleged a dollar value to the lawsuit. The prayer to a judicial complaint is by definition not factual but reflects the work product or litigation strategy of the lawyer who drafted it. By comparing the prayers of both complaints, NOV was invoking the litigation strategy of the Plaintiffs' lawyers. This is precisely the sort of extraneous prejudice **Rule 403** was designed to prevent.

C.   ANY SIMILARITIES BETWEEN THE TWO LAW SUITS WERE NOT HIGHLY PROBATIVE

The fact there may be or are similarities between the present case and Bryant

9

complaint is not, by itself, highly probative.

With regard to slurs and epithets, many of those are in such common usage that their presence in a particular discrimination case is, sadly, not itself unusual but is attributable to the legacy of race discrimination Title VII and similar statutes were enacted to eradicate. This can be seen in a very broad over view of discrimination jurisprudence. See Declaration of Angela Alioto, Para 12.

It is hardly surprising, for instance, to encounter the slur "nigger" in a case of racial harassment or discrimination;

> "It is beyond question that the use of the word "nigger" is highly offensive and demeaning, evoking a history of racial violence, brutality and subordination. This word is perhaps the most offensive and inflammatory racial slur in English . . . a word expressive of racial hatred and bigotry. [citations omitted] The word "nigger" is more than [a] mere offensive utterance . . . no word in the English language is as odious or loaded with as terrible a history. That the word "nigger" is a slur is not debatable." **McGinest v. GTE Service Corp.** (9th Cir. 2004) 360 F.3d 1103, 1116.

Regarding the usage of monkey or gorilla imagery, the Fifth Circuit, for instance, has recognized that "African-Americans have historically been subjected to such comparisons[.]" **Henry v. Corpcar Servs. Houston, Ltd.,**(5th Cir, January 27, 2015) 2015 U.S. App. LEXIS 1208*12. In support of a plaintiff's verdict, the **Henry** case cited an 11th Circuit case for the proposition that "'Given the history of racial stereotypes against African-Americans and the prevalent one of African-Americans as animals or monkeys, it is a reasonable—perhaps even an obvious—conclusion that' the use of monkey imagery is intended as a 'racial insult' where no benign explanation for the imagery

10

appears." **Jones v. UPS Ground Freight**,(2012) 683 F.3d 1283, 1297.

The presence of hangman's noose imagery in a race discrimination case is not novel. As the Tenth Circuit observed; "[T]he image of a noose is "deeply a part of this country's collective consciousness and history, any [further] explanation of how one could infer a racial motive appears quite unnecessary."" **Tademy v. Union Pacific Corporation** (10th Cir. 2008) 520 F.3d 1149, 1159.

Nor is it surprising that both cases would feature usage of the word "boy," which is a common slur of longstanding: "As typically used in everyday English, there is nothing inherently offensive about the word "boy." Nevertheless, it is a term that has been used to demean African-American men, among others, throughout American history." **Tademy**, supra, 614 F.3d at 1142.

The fact there are similar allegations of harassment in this lawsuit and in the Bryant case is, by itself of minimal probative value - comparable to allegations of negligent operation of a motor vehicle in a personal injury case deriving from an automobile accident. Were the present matter a case deriving from a rear end collision, would the reading of a complaint from another rear end collision case have been permitted? Likely not as the fact that use of the same verbiage to describe different events has little probative value.

The prejudice is plainly unfair, especially given the fact that no evidence was presented showing that Vital had actually read the Bryant complaint. Through the (selective) reading of the Bryant complaint, the jury was presented with a claim that

11

similar allegations were made in both cases. How could the Plaintiffs' have explained

the similarities?  Through the presentation of expert testimony as to the manifestations

of racism in the United States?

D.      **READING OF THE BRYANT v. FMC COMPLAINT**
        **INTO THE RECORD MERITS REVERSAL**

This Court must decide whether the effect of the error in admitting the Bryant

Complaint significantly prejudiced the Plaintiffs case or whether it only had a slight

effect, **Hollybrock v. Cottonseed Processing**, supra, 712 F.3d at 1034. NOV cannot be

heard to complain that the utilization of the Bryant v. FMC complaint was harmless

error. On the record, their lead trial attorney stated: "[T]his is the single most important

thing on the defense of Mr. Vital for me.  I have built the entire cross around this point."

Sept 29 RT P. 6:9-11.  Off the record, Opposing Counsel alluded to this before hand with

a threat to Plaintiffs' counsel. Alioto Declaration Para (" Guns a blazing, I am coming

after you").

The case of **Ross v. Stahl** (WD NC, 1980) 502 F.Supp. 107, 114-115 is instructive.

Here, as there, the witness was subjected to a cross-examination that was, in part,

unrelated to matters within the Plaintiff's own knowledge (The contents of the Bryant

complaint) and were not asked in good faith but for the purpose of showing a similarity

between the two lawsuits which did not exist.

Here, as in **Hollybrock**, egregious misconduct - representing that the Alioto law

firm had fabricated the present lawsuit - occurred moments before the jury retired to

deliberative strongly supports a finding that the prejudice had a substantial effect.

12

6.   **ATTORNEY MISCONDUCT IS SUFFICIENTLY SEVERE AS TO MERIT A NEW TRIAL**

Attorney misconduct can warrant a new trial in certain circumstances. **Winter v. Brenner Tank, Inc.,** (5th Cir. 1991)  926 F.2d 468, 473.

Here, there was a substantial amount of misconduct on the part of Defense Counsel, John Zavitsanos.  In addition to the fraud upon the Court referenced in this motion, we have a repeated pattern of questioning witnesses that were, in effect, arguments and speeches, with brief questions tacked on at the end for the sake of appearance. While Plaintiffs' Counsel objected to many of these, there was no way that they could object to all of them without obstructing the flow of evidence. The argumentative questions were, when certain Plaintiffs were being questioned,  coupled with a raising of the voice.

The most obvious form of this misconduct occurred when the Plaintiffs' economic expert, Dr. Kenneth Lehrer, testified.  When Mr. Zavitsanos took over the examination, the questioning quickly degenerated into what can only be characterized as a verbal brawl, with Zavitsanos yelling at Dr. Lehrer.  Zavitsanos cross -examination was not limited to challenging the contents of Lehrer's report but dredged up unrelated matters, some of which were quite inflammatory and most of which were irrelevant to the testimony at hand but seemingly more germane to apparently deep seated  personal quarrels between the two men.  The verbal brawl persisted for several minutes before order was finally restored.

Zavitsanos had not, evidently, calmed down by the time of closing argument. In

13

the last few moments of his closing argument he referred to Dr. Lehrer as a "racist" and

of he said "[t[his filth, this piece of garbage, takes the stand." Oct 5, 2015 (Second

Session) P. 50:22-51:7. Zavitsanos could not even contain himself in Ms. Alioto's rebuttal

closing argument, objecting at the mention of Dr. Lehrer.  Id at 56:24-57:9.  The cold

record does not do that objection justice,

In closing argument Zavitsanos engaged in broadside attack on Plaintiffs' lead

trial Counsel.  Arguing that, contrary to a previous representation to the Court,[3] that the

Alioto law firm and not the Plaintiffs fabricated the lawsuit [E.g. "We have 32

instances of identical allegations, 32 that are just totally fabricated." Id at P. 52:8-15 See

generally, Id at 51:28-53:8].  That attack was especially egregious in light of the repeated

disparagement of the Alioto Law Firm throughout the trial. September 29. 2015 RT 14:7-

14.

The conduct of Zavitsanos was in blatant breach of the applicable local rules.

For instance, the repeated attacks on Plaintiffs' Counsel, her law firm and the

expert witness violated Rule N of the Rules on Courtroom Etiquette.  That rule

admonishes lawyers to:

> Avoid disparaging remarks and acrimony toward Counsel, and
> discourage ill will between the litigants. Counsel must abstain
> from unnecessary references to opposing Counsel, especially
> peculiarities. USDC/SDTX Local Rules (2000) Appendix C
> P. 32.

---

[3] See September 29. 2015 RT P. 7:11-8:4. [E.g. Court: "-I don't understand Mr.
Zavitsanos to  accuse you or your law firm MR. ZAVITSANOS: Correct" THE
COURT: --of being the instigator of a scheme to copy."]

14

This was not the only rule of conduct violated by Zavitsanos and his co-Counsel .

For instance, consider this Rule from the Guidelines for Professional Conduct;

> Effective advocacy does not require antagonistic or obnoxious behavior
> and members of the Bar will adhere to the higher standard of conduct
> which judges, lawyers, clients, and the public may rightfully expect.
> Guidelines for Professional Conduct, Rule K, USDC/SDTX Local Rules
> (2000) Appendix D  P.  34.

The Plaintiffs are not pointing to isolated instances but to repeated conduct

throughout the trial, which given its repetition, cannot but have had a profoundly,

unfair effect on the consideration of the Plaintiffs' case. "To justify a reversal based on

improper comments of Counsel, the conduct must be such as to gravely impair the calm

and dispassionate consideration of the case by the jury." **Dixon v. Int'l Harvester Co.,**

(5th Cir.1985) 754 F.2d 573, 585.    That is exactly what happened in ths case. The verdict

should be vacated and a new trial ordered.

7.    **NOV'S REFERENCE TO THE EEOC CHARGES**
      **WAS INAPPROPRIATE AND UNDULY PREJUDICIAL**

NOV's utilization of the EEOC administrative complaints to impeach the

Plaintiffs was inappropriate.

A Title VII claim need not track the contours of the administrative complaint

initially filed with the United States Equal Employment Opportunity Commission

("EEOC"). **Thomas v. Texas Dep't of Crim. Justice,** (5th Cir, 2000)   220 F.3d 389, 395

["The scope of a Title VII complaint is limited to the scope of the EEOC investigation

which can reasonably be expected to grow out of the charge of discrimination."]

**Thomas** itself is grounded on the landmark Fifth Circuit case of **Sanchez v. Standard**

15

**Brands. Inc** (5th Cir, 1970) 431 F.2d 455, which taught that:

> A charge of discrimination is not filed as a preliminary to a lawsuit.
> On the contrary, the purpose of a charge of discrimination is to
> trigger the investigatory and conciliatory procedures of the EEOC.
> Once a charge has been filed, the Commission carries out its
> investigatory function and attempts to obtain voluntary compliance
> with the law. Only if the EEOC fails to achieve voluntary compliance
> will the matter ever become the subject of court action. Thus it is
> obvious that the civil action is much more intimately related to the
> EEOC investigation than to the words of the charge which originally
> triggered the investigation.  Id at 466.

In **Sanchez**, the original EEOC charge only alleged discrimination based upon

sex.  The resulting complaint alleged discrimination based upon national origin and

race.. The District Court granted a motion to dismiss on the grounds that the EEOC

charge made no mention of race or national origin.  Id at 460.

In support of the District Court's decision in **Sanchez**, the employer, among

other things, objected that the amended charge contained facts distinct from those

found in the initial charge and the judicial complaint contained additional factual

matter. The Fifth Circuit rejected this contention, noting that EEOC administrative

remedy is a "lay initiated process," "it would be out of keeping with the Act to import

common-law pleading niceties to [the charge of discrimination] or in turn to hog-tie the

subsequent lawsuit to any such concepts." Id at 465.  The **Sanchez** Court specifically

rejected the employer's arguments regarding the factual variance between the charge

and the judicial complaint:

> Standard Brands, however, insists that plaintiff's judicial
> complaint contains allegations which are beyond the scope
> of either charge of discrimination. This argument appears to

16

be premised on the assumption that every particular fact
alleged in the judicial complaint must have a direct
counterpart in the charge of discrimination. For the reasons
hereinafter given, we decline to exact such specific articulation
and minuscule particularity in the context of Title VII. We
conclude that the specific words of the charge of discrimination
need not presage with literary exactitude the judicial pleadings
which may fol low. Id at 465.

Thus, 45 years of Fifth Circuit precedent  stands for the proposition that EEOC

administrative charges are not to be treated as pleadings or to be strictly construed. It

follows, then, that attempts in a trial court to impeach a Title VII litigant with the

original administrative charge are not permissible.  To do so would be to "hog tie" the

subsequent law suit in the manner disapproved by **Sanchez**.

8.   **THE ALLEGATIONS CONTAINED IN THE FIRST
AMENDED COMPLAINT SHOULD NOT HAVE BEEN TREATED
AS EVIDENTIARY ADMISSIONS**

NOV sought to impeach the testimony of several Plaintiffs through allegations

contained in their first amended complaint.  That pleading was not verified by any of

the plaintiffs nor did they draft any portion of it.  Nonetheless there was the

supposition that if the Plaintiffs' testimony in trial varied or was inconsistent with that

in the first amended complaint, it would reflect poorly upon their credibility.   The

legal rationale for the use of the first amended complaint in that fashion was that any

inconsistent statements in the pleading were, by definition, judicial admissions.

Whether or not that was the case, the problem here is that in trial they were treated as

evidentiary admissions.

'A judicial admission is a formal concession in the pleadings or stipulations by a

17

party or Counsel that is binding on the party making them. A judicial admission is not itself evidence. A judicial admission has the effect of withdrawing a fact from contention. For instance, a statement made by Counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact. **Martinez v. Bally's La., Inc.,** (5th Cir, 2011) 244 F.3d 474, 476.

By contrast, an ordinary evidentiary admission is "merely a statement of assertion or concession made for some independent purpose," and it may be controverted or explained by the party who made it." Id at, 476-477.

The effect of a judicial admission is to remove issues from legal dispute. In other words, a party is not allowed to present evidence that contradicts prior judicial admission, unless relieved by the court of the admission. "A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party." **Keller v. United States,**(7th Cir. 1995 ) 58 F.3d 1194, 1199 n. 8 (quoting John William Strong, McCormick on Evidence, § 254 at 142 (1992)). Judicial admissions have often been used "as a judicial housekeeping tool of sorts, such as to bind parties to facts agreed to in the pre-trial order." **Ramirez v. Norwood,** (ND Miss) 2015 U.S. Dist. LEXIS 129234*39.

If NOV believed the Plaintiffs here made judicial admissions in the First Amended Complaint, it should have filed an in limine motion to preclude presentation of any contrary evidence by the Plaintiffs. In other words, the use of any judicial

18

admissions would have been to remove issues from contention.

NOV used allegations in the pleadings as *evidentiary* admissions. The Plaintiffs were confronted with allegations in the First Amended Complaint that NOV contended contradicted their trial deposition testimony in much the same way as witnesses are impeached by conflicting deposition testimony or interrogatory responses.  On the one hand, this is not, of course, how a judicial admission is to be used in a trial and, on the other, the statements in the complaint were not testimony of the Plaintiffs, sworn or otherwise, but were written by their lawyers and had,  by the time of trial, been superceded by the summary judgment order and the pretrial order. Nonetheless, by using the allegations in the First Amended Complaint to impeach the Plaintiffs, NOV created the impression that Plaintiffs testimony was inconsistent or untruthful.

This impression of untruthfulness or inconsistency created through use of the judicial complaint to impeach testimony was unfairly prejudicial, as defined by FRE 403, because it was founded upon a false premise that the judicial complaint  NOV used to impeach Plaintiffs testimony embodied sworn testimony.

NOV should not have been allowed to use the First Amended Complaint to impeach Plaintiffs testimony.  NOV had ample means to impeach the testimony of Plaintiffs if it felt it had to . Those means included deposition testimony, interrogatory responses, summary judgment declarations etc.  On the other hand, if NOV felt there were clear judicial admissions in the pleadings, it could have sought in limine relief. What it actually did, however, was to improperly represent that the First Amended

19

Complaint was sworn testimony when it was obviously no such thing and/or that the

Plaintiffs were somehow the authors of it, when they were not.

## CONCLUSION

For all the reasons listed above, Plaintiffs' motion for a new trial should be

granted.

Respectfully submitted

Date: November 12, 2015

/s/ Steven L. Robinson

Angela M. Alioto, Esq.
(Attorney-in-Charge)
CA Bar  No. 130328
SDTX No. 957811
Steven L. Robinson, Esq.
CA Bar No. 116146
SDTX No. 966699
Angela Mia Veronese, Esq.
CA Bar No. 269942
SDTX No.  1531437
Matthew J. Wayne
CA Bar No. 283897
SDTX No.  1751326

CERTIFICATE OF SERVICE

I  hereby certify that a copy of the above and foregoing Plaintiffs Motion for New Trial
has been served upon Defendants via the Court's  Electronic Notification/Filing
System:

Christopher E. Moore, Esq.

Christine M. White, Esq.
Jennifer L. Englander, Esq.
Monique R. Gougisha-Doucette

Ogletree, Deakins, Nash, Smoak
& Stewart, P.C.
One Shell Square
701 Poydras St., Suite 3500
New Orleans, LA 70139

John Zavitsanos, Esq

Electronic Mail:
Christopher.Moore@ogletreedeakins.com
Christine.White@ogletreedeakins.com
Jennifer.Englander@ogletreedeakins.com
Monique.Gougisha@ogletreedeakins.com
jzavitsanos@azalaw.com,

This 12th Day of November 2015

/s/    Steven L. Robinson