UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUNIOUS VITAL, DAMON DARBY HERBERT HEARD, BILLY ROSE JEROME JOHNSON, DAVID LANE, EDWARD JILES, DEWARREN BELLARD, | § § § § § | CIVIL ACTION NO. 4:12-CV-1357 |
| *Plaintiffs*, | § § § | JUDGE LEE H. ROSENTHAL |
| v. | § § | |
| NATIONAL OIL WELL VARCO, | § § | |
| *Defendant*. | § | |

---

**NOV'S SECOND RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR NEW TRIAL**

---

On November 12, 2015, plaintiffs filed a second Motion for New Trial in which they generally repeat the arguments made in their first Motion and, at times, augment those arguments. Their second Motion for New Trial is no more convincing than their first one. Plaintiffs' complaints about the admission of prejudicial evidence derive from apparent misunderstandings concerning proper methods of impeachment at trial. Plaintiffs' claims of attorney misconduct in their motion are without support in law or fact. Since plaintiffs' misinterpretations of the Federal Rules of Evidence and baseless accusations of misconduct are insufficient reasons to grant a new trial under Federal Rule of Civil Procedure 59,[1] National

---

[1] Plaintiffs' citation to Federal Rule of Civil Procedure 50 in the very first sentence of their new motion appears erroneous. Pls.' Mot. New Trial, Nov. 12, 2015, ECF No. 206 1. Although Rule 50(b) permits a party to include an alternative or joint request for new trial with their renewed motion for a judgment as a matter of law, it does not appear that plaintiffs move for a renewed judgment as a matter of law. In fact, they cannot. *See, e.g.*, *Transverse, LL.C. v. Iowa Wireless Services, L.L.C.*, 617 Fed. Appx. 272, 276 (5th Cir. 2015) (Rule 50(b) requires preceding

Oilwell Varco, L.P. ("NOV") asks the Court to deny both Motions for New Trial that plaintiffs have filed.[2]

## I.      Plaintiffs' dissatisfaction with the successful impeachment of Junious Vital does not entitle them to a new trial.

The line of questioning that contradicted Junious Vital's statements about familiarity with the complaint from *Bryant v. FMC Technologies, Inc.*, No. 08-cv-03744 (S.D. Tex. Dec. 26, 2008) was properly before the jury, because it was relevant and its probative value was not substantially outweighed by the danger of any category of prejudicial effect identified by plaintiffs or Federal Rule of Evidence 403.

During the offer of proof for the *FMC* line of questioning, plaintiffs objected only on the basis of relevance and not on the basis of undue prejudice. Jury Trial Tr. Day 9 (Afternoon Session) at 7:10, 10:18–19, 13:6–7. In their second Motion for New Trial, plaintiffs argue alternatively that the *FMC* line of questioning should have failed a Federal Rule of Evidence 403 analysis. *See, e.g.*, Pls.' Mot. New Trial, Nov. 11, 2015, ECF. No. 206 at 8–17.[3] Although the plaintiffs should not get a mulligan to make Rule 403 arguments just because they are dissatisfied with the outcome of the trial, it makes no difference. The *FMC* line of questioning was permissible under both Rule 401 and Rule 403. This means there was no error at all with its presentation to the jury, much less the prejudicial error affecting a substantial right that plaintiffs must show to get a new trial under Federal Rule of Civil Procedure 59.

---

motion for judgment as a matter of law) (quoting *Bohrer v. Hanes Corp.*, 715 F.2d 213, 216 (5th Cir. 1983)). Plaintiffs made no predicate motion for judgment as a matter of law.

[2] Rather than repeat arguments made in NOV's Response in Opposition to Plaintiffs' Motion for New Trial, Nov. 2, 2015, ECF. No. 204, NOV incorporates those arguments by reference.

[3] In their second Motion for New Trial, plaintiffs loosely suggest that the entire *FMC* complaint was admitted in evidence. *E.g.*, Pls.' Mot. New Trial, Nov. 12, 2015, ECF No. 206 at 7 ("this Court allowed that document into evidence"). That is untrue. The plaintiffs' oral testimony about familiarity with the *FMC* complaint was admitted in evidence.

### A.  The *FMC* line of questioning was relevant because it tended to contradict Mr. Vital's testimony that he was unfamiliar with specific facts in *FMC*.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.  Mr. Vital testified that "[he] didn't know the details of that [*FMC*] case" and also that he only "knew that Ms. Alioto . . . handled [the *FMC* plaintiffs'] case." Jury Trial Tr. Day 9 (Morning Session) 86:18–19; Jury Trial Tr. Day 9 (Afternoon Session) 16:18–19.  The number of similarities between factual allegations in *FMC* and this case, the nature of those similarities, and the timing of their emergence in this case all tend to make this consequential, critical fact less probable: Mr. Vital was unaware of the details of the FMC case.

The relevance of the *FMC* line of questioning is apparent if one visualizes an abductive argument with four premises, as follows:

> Premise No. 1: There were many striking factual similarities between allegations made in *FMC* and those made in this case.
> Premise No. 2: Plaintiffs were aware of *FMC* generally.
> Premise No. 3: Plaintiffs had multiple opportunities to report on the factual similarities with *FMC* before they became aware of that case.
> Premise No. 4: The striking factual similarities shared with *FMC* emerged in this case only after plaintiffs demonstrated awareness of *FMC*.
>
> Conclusion: Plaintiffs were aware of the specific factual allegations of *FMC*.

In their second motion for new trial, plaintiffs take issue with the first premise above, bury the significance of the second premise, and ignore the third and fourth premises altogether.  *See, e.g.*, Pls.' Mot. New Trial, Nov. 12, 2015, ECF No. 206 at 12 ("NOV's impeachment consisted solely of comparing the contents of the *Bryant* complaint to the present lawsuit"), 14 (commenting in passing on Mr. Vital's Facebook message to Pam Jiles).  Significantly, the argument modeled above is consistent with the position NOV took following the Federal Rule of Evidence 104

hearing and during the offer of proof for the *FMC* line of questioning. Pretrial Hearing Tr. at 64:4–13; Jury Trial Tr. Day 9 (Afternoon Session) at 5:9–24, 11:8–12:9.

Whether Mr. Vital was being untruthful about his familiarity with the details of *FMC* is consequential for two reasons.  First, it probes his credibility.  Second, it suggests that plaintiffs were making allegations — many of which involved truly despicable conduct — that had an independent source of inspiration and were unconnected to the plaintiffs' personal experiences.

One specific example illustrates the relevance of the *FMC* line of questioning.

1. *FMC* involved allegations of actual physical nooses present in the workplace.  Jury Trial Tr. Day 9 (Afternoon Session) at 10:2–12 ("there were seven physical nooses in that case, and a burning cross. Okay?").

2. Mr. Vital was aware of *FMC*. Trial Ex. 216 ("These are the same lawyers that handled the FMC case and won this year").

3. There is no evidence of plaintiffs alleging the presence of physical nooses in the NOV workplace prior to the filing of their complaint in this lawsuit.  *See, e.g.*, Jury Trial Tr. Day 9 (Morning Session) at 80:24–81:17 (noting omission of physical noose allegations from EEOC charges).

4. Plaintiffs filed a complaint mentioning physical nooses only after Mr. Vital demonstrated awareness of *FMC*.  *Compare* Trial Ex. 216 ("These are the same lawyers that handled the FMC case and won this year" on November 11, 2011), *with* Pls.' Am. Compl., ECF No. 60 at 6–7, 33–34 (alleging presence of physical noose on May 24, 2013).

From this evidence, a factfinder could infer that Mr. Vital was familiar with the specific allegations from *FMC* that there were actual physical nooses in the workplace.  This contradiction would impeach Mr. Vital's testimony and cast doubt on the allegations he, along with his other plaintiffs, made against NOV.  Other examples of vivid racist imagery follow the pattern laid out above; there is no evidence of them until after plaintiffs demonstrate an awareness of *FMC*.  *E.g.*, Jury Trial Tr. Day 9 (Afternoon Session) 27:22–31:2 (concerning swastikas and confederate clothing).

4

**B. The probative value of the *FMC* line of questioning was not outweighed by any prejudicial impact because it provided an explanation for the plaintiffs' continually changing testimonies.**

The Fifth Circuit has explained probative value in the context of Federal Rule of Evidence 403 is "incremental probity of the evidence that is to be balanced against its potential for undue prejudice." *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978). In *Beechum*, the incremental probity of the defendant letter carrier's possession of credit cards stolen from the mail was great in his trial for unlawfully possessing a silver dollar stolen from the mail in part because (1) intent was a central issue of the case; and (2) the Government had little other evidence to establish intent. *See* 582 F.2d at 916–18. Here, the credibility of the plaintiffs was of paramount importance. They had little documentation to support their explosive allegations and called no fact witnesses to corroborate their testimonies other than the plaintiffs or their relatives.[4] Without the *FMC* line of questioning, NOV could only impeach the plaintiffs' credibility by all of their inconsistent prior statements, and by calling its own witnesses to contradict the plaintiffs' testimony. With the *FMC* line of questioning, NOV could provide a framework to explain why plaintiffs were providing such radically different allegations of discrimination at different points in time. These factors indicate that the probative value of the *FMC* line of questioning was considerable.

What is more, plaintiffs' complaints of unfair prejudice make no sense. Arguing that the admission of the *FMC* line of questioning held the client responsible for the attorney's litigation strategy ignores that the client is (or should be) the source of the facts in his complaint. *See, e.g.*, Pls.' Mot. New Trial, ECF No. 206 at 11–12. NOV was not commenting just on verbiage that

---

[4] Even that proved inadequate for their cause. Plaintiffs' witness Pam Jiles testified that she had not seen anything at NOV that would warrant plaintiffs recovering 1/10th of 1% of the damages they were seeking. Jury Trial Tr. Day 3 (Afternoon Session) at 79:12–22.

5

may have been drafted by a lawyer. *Id.* at 14.  NOV highlighted specific factual representations of racial misconduct for which the clients were the source.  *See, e.g.*, Jury Trial Tr. Day 9 (Morning Session) at 64:6–13 (confirming that it was Mr. Vital's contention that managers knew of a hostile work environment and did nothing about it).

Last, it is not at all clear how plaintiffs suffered unfair prejudice when they admit in their motion that there were "ample tools at [NOV's] disposal to convince the jury" that plaintiffs "had manufactured or falsified their claims of race harassment," "including the Facebook message from [Mr.] Vital to Pam Jiles, the testimony of various NOV witnesses and the [p]laintiffs themselves."  Pls.' Mot. New Trial, Nov. 11, 2015, ECF No. 206 at 14.  If contradicting Mr. Vital's testimony with *FMC* corroborated other evidence before the jury, while providing clarity to why the inconsistent allegations developed in the manner they did, that would suggest there was no error at all.

With the probative value of the *FMC* line of questioning not substantially outweighed by unfair prejudice, it was well within the Court's discretion to permit the impeachment of Mr. Vital by contradiction. *See* Fed. R. Evid. 403; Fed. R. Evid. 611(b); Jury Trial Tr. Day 9 (Afternoon Session) at 5:25–13:23.

**II.     The Court committed no error when it permitted NOV to impeach the plaintiffs and their witnesses with prior statements.**

Plaintiffs' statements in their EEOC charges were admitted as trial exhibits without objection, enabling their use as both substantive and impeachment evidence, as NOV argued in its previous Response in Opposition to Plaintiffs' Motion for New Trial, Nov. 2, 2015, ECF No. 204 at 10–12.  Plaintiffs' statements in their Amended Complaint were admissions of party

opponents, properly admissible for impeachment consistent with Federal Rule of Evidence 801,

as NOV previously argued. *Id.* at 12–14.

### III.     Fraud on the court is a serious accusation for which there is no support.

Plaintiffs present fraud on the court as their first basis for arguing that attorney

misconduct warrants granting a new trial. Plaintiffs cite no legal standard and provide only

minimal analysis in support of this bankrupt argument.   In the Fifth Circuit, a party seeking relief

from judgment based on fraud on the court must show:

> an unconscionable plan or scheme which is designed to improperly influence the court in
> its discretion.  Generally speaking, only the most egregious misconduct, such as bribery
> of a judge or members of a jury, or the fabrication of evidence by a party in which an
> attorney is implicated will constitute a fraud on the court.  Less egregious misconduct,
> such as nondisclosure to the court of facts allegedly pertinent to the matter before it will
> not ordinarily rise to the level of fraud on the court.

*Fierro v. Johnson*, 197 F.3d 147, 154 (quoting *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d

1554, 1573 (5th Cir. 1996)).  NOV engaged in no bribery or fabrication of evidence here.

Misrepresentations of theories of defense, likewise nonexistent, would in any event trend toward

the "less egregious" side of the spectrum.

In addition to the deficiencies in law, plaintiffs' fraud-on-the-court argument is deficient

in fact.  NOV was consistent in its representations to the Court during its statements at the Rule

104 hearing, during its offer of proof for the *FMC* line of questioning, during its cross-

examination of Mr. Vital, and during its closing arguments.  NOV indicated that it wanted to

prove that many allegations were fabricated to conform to a successful pattern of complaint in

the past, what NOV eventually named the "playbook."  Pretrial Hearing Tr. at 64:4–13 ("if the

Court does admit [evidence of nooses], we're going to drive a semi right through this allegation

. . . we are going to prove that it is fabricated"); Jury Trial Tr. Day 9 (Afternoon Session) at 5:9–

24, 11:8–12:9 ("I'm going to demonstrate that these allegations have been growing to match that

case"); Jury Trial Tr. Day 9 (Morning Session) at 61:16–18 (on cross of Mr. Vital, "And that's what you have done in this case? You have got the playbook and you run the playbook"); Jury Trial Tr. Day 13 (Afternoon Session) at 52:10–12 ("We are going to run the playbook. We have 32 instances of identical allegations, 32 that are just totally fabricated.").  And NOV referenced in its closing argument the subtle form of racism that took shape by running the "playbook"— that is, the belief that being African American was the primary determinant of being able to prosecute a successful suit against NOV, rather than according due deference to individual experience.  Jury Trial Tr. Day 13 (Afternoon Session) at 52:12–15.  Plaintiffs' assumption that the comment in closing concerning the subtle form of racism was directly and solely targeted at its counsel is incorrect.  *See, e.g.*, Jury Trial Tr. Day 9 (Morning Session) at 74:13–15 ("And you went around NOV soliciting all the African-American employees to join a case against NOV so you can hit it big, right?").

### IV.    Plaintiffs' other vague allegations of attorney misconduct are unsupported by the record or case law.

In addition to its previous responses to plaintiffs' allegations of attorney misconduct, NOV notes here that it finds befuddling plaintiffs' continued support and defense of their expert, Dr. Kenneth Lehrer.  *See* Def.'s Resp. Mot. New Trial, Nov. 2, 2015, ECF No. 204 at 17–20 (responses to other allegations of attorney misconduct); Pls.' Mot. New Trial, Nov. 12, 2015, ECF No. 206 at 18–19 (persistent defense of Dr. Lehrer).  Had plaintiffs felt it was improper for NOV to name Dr. Lehrer a racist in its closing, and disparage him for the racist sentiments he testified harboring, they could have objected and moved for a mistrial, just as NOV may have objected when plaintiffs' counsel exhorted the jury to be like the storm that she said put "the grace of God" in repentant slave-trader and noted hymnist John Newton.  Jury Trial Tr. Day 13 (Afternoon Session) at 56:12–22; *Cf. Hollybrook Cottonseed Processing, L.L.C. v. American*

*Guarantee & Liability Ins. Co.*, 772 F.3d 1031, 1033 (5th Cir. 2014) (plaintiff immediately objected and moved for mistrial during improper comments in closing argument).  Their complaints now ring hollow.

As a final matter, NOV is puzzled by the declaration plaintiffs attach to their latest Motion for New Trial.  On the one hand, it appears to attempt to introduce evidence of a juror's statement in violation of Federal Rule of Evidence 606(b).  *See, e.g.*, *Weaver v. Puckett,* 896 F.2d 126, 127 (5th Cir. 1990) ("Fed. R. Evid. 606(b) makes juror testimony incompetent to impeach a jury verdict.") (citations omitted).  On the other, it appears to include misrepresentations of fact.  In the interest of ensuring the record is complete and accurate, NOV includes an affidavit with this response to address the deficiencies in the declaration attached to plaintiffs' motion.  Ex. F.

## V.    Conclusion.

That Federal Rules of Evidence 401 and 403 permitted NOV to probe the credibility of plaintiffs' allegations does not entitle plaintiffs to a new trial.  That Federal Rule of Evidence 801 permitted NOV to impeach plaintiffs with prior inconsistent statements does not entitle plaintiffs to a new trial.  That NOV's counsel delivered zealous advocacy within the bounds of applicable rules of procedure and professional conduct does not entitle plaintiffs to a new trial.  That plaintiffs now find chimeras in the shadows of their disappointment does not entitle plaintiffs to a new trial.  Proving to a reasonable clarity that prejudicial error suffused the trial or that substantial justice had not been done would entitle plaintiffs to a new trial, and that plaintiffs cannot do.

NOV asks that the Court deny plaintiffs' Motions for New Trial.

Respectfully submitted,

/s/ John Zavitsanos
John Zavitsanos
State Bar No. 22251650
Federal No. 9122
AHMAD, ZAVITSANOS, ANAIPAKOS,
 ALAVI & MENSING, P.C.
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062
jzavitsanos@azalaw.com

and

Christopher E. Moore, Esq. (Attorney-in-Charge)
TX Bar No. 24052778; SDTX Bar No.  713063
Christine M. White, Esq.
TX Bar No. 24068713; SDTX Bar No.  712655
Jennifer L. Englander, Esq.
LA Bar No. 29572; SDTX Bar No. 1430436
Monique R. Gougisha-Doucette, Esq.
LA Bar No. 28057, SDTX Bar No. 1552047
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA 70139
Telephone:  (504) 648-3840
Facsimile:  (504) 648-3859
Electronic mail:
Christopher.Moore@ogletreedeakins.com
Christine.White@ogletreedeakins.com
Jennifer.Englander@ogletreedeakins.com
Monique.Gougisha@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANT
NATIONAL OILWELL VARCO, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of November a copy of the above and foregoing NOV's Second Response in Opposition to Plaintiffs' Motion for New Trial has been served on the following counsel of record via the Court's Electronic Notification/Filing System:

Angela M. Alioto, Esq.
Steven Lloyd Robinson, Esq.
Matthew J. Wayne, Esq.
Angela Mia Veronese, Esq.
Law Offices of Mayor Joseph L. Alioto and Angela Alioto
700 Montgomery St.
San Francisco, CA 94111
Facsimile: (415) 438-4638
Electronic mail: srobinson@aliotolawoffice.com; angelaav@aol.com; mwayne@aliotolawoffice.com; and amv@aliotolawoffice.com.


*/s/ John Zavitsanos*
John Zavitsanos