United States District Court
Southern District of Texas
**ENTERED**
November 30, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUNIOUS VITAL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-1357 |
| | § | |
| NATIONAL OILWELL VARCO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING MOTIONS FOR NEW TRIAL**

The parties tried this employment-discrimination dispute to a jury in September and October 2015. The jury returned a take-nothing judgment in favor of NOV. (Docket Entry No. 202). The plaintiffs, Junious Vital, Damon Darby, Herbert Heard, Billy Rose, Jerome Johnson, David Lane, Edward Jiles, and DeWarren Bellard, have timely moved for a new trial, asserting prejudicial error. (Docket Entry Nos. 199, 206). NOV opposes the motions.[1] (Docket Entry Nos. 204, 207). Based on the record, the motions and responses, and the applicable law, the court denies the plaintiffs' motions for a new trial. The reasons are explained below.

**I.     The Legal Standard Under Rule 59**

---

[1] The plaintiffs filed two motions for a new trial. (Docket Entry Nos. 199, 206). The first motion was filed within seven days of the judgment based on a misunderstanding of the court's October 6, 2015 minute entry, (Docket Entry No. 164), which was later amended "to the extent of clarifying that the 7-day deadline for the post-verdict motions does not preclude the plaintiffs from filing a Rule 50, 59, or 60 motion after the judgment is entered and within the deadlines set by the Federal Rules of Civil Procedure," (Docket Entry No. 201). Because both motions were filed within the Rule 59 deadlines and assert similar arguments, the court considers them together. NOV has responded to both motions.

The plaintiffs' motion to vacate the original minute entry, (Docket Entry No. 188), is dismissed as moot in light of the amendment to Docket Entry No. 164.

1

"The court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (footnotes omitted). A Rule 59 motion is not granted "unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quotation marks omitted). "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

**II.     The *Bryant v. FMC* Complaint**

   **A.     Background**

The Law Offices of Joseph Alioto & Angela Alioto represented the plaintiffs throughout the litigation. In 2008, the Alioto firm represented a different group of plaintiffs in *Bryant v. FMC Technologies*, No. 08-3774 (S.D. Tex. 2008). That case alleged racial discrimination, harassment, and retaliation against an employer, FMC Technologies. During the trial in this case, NOV introduced evidence that some of the plaintiffs—Junious Vital, in particular—knew the details of the *FMC* case and used it as the basis of the allegations they made against NOV in this case. NOV relied on a November 11, 2011 email Junious Vital sent to Pam Jiles, a former NOV human-

2

resources employee.[2]  Vital encouraged Jiles to join him at a meeting with the Alioto firm lawyers to discuss his claims against NOV.  In the email, Vital touted the firm's win in *FMC*.  The message was admitted into evidence, over the plaintiffs' objection, under Federal Rule of Evidence 801(d)(2)(A).  (Docket Entry No. 183 at p. 137–43).  It read:

> Hey Pam, we will meet with the lawyers Wednesday at 6:30 p.m. at the Granduca Hotel, 1080 Uptown Park Boulevard, Houston, TX 77056, and please be on time. If you can, please contact them in advance at [phone number].  These are the same lawyers that handled the FMC case and won this year.  After talking to them, they feel you will be an important part to the case.  We need you, Pam![3]

(Defense Tr. Ex. 216).

Vital was questioned about the message during direct examination and asked to read the message aloud.  (Docket Entry No. 177 at p. 6–7).  On cross-examination, Vital testified that he "knew nothing about" the FMC case, "what was won, how much was won, anything.  I didn't know the details of that case." (*Id.* at 86).  Plaintiffs' counsel objected to further questioning about the *FMC* lawsuit on the basis of relevance.

Outside the jury's presence and before resuming cross-examination, counsel for NOV explained why the allegations in the *FMC* case were relevant to impeach Vital.  Vital's message to Jiles referred to the *FMC* case, making it likely that Vital not only knew about that case but also about its allegations and result, despite his testimony to the contrary.  The larger defense theory was that the plaintiffs fabricated their allegations against NOV based on the allegations in the *FMC* complaint.  (Docket Entry No. 192 at p. 5–15).

---

[2] At various points in the trial, the parties described the message as having been sent by email, text, or Facebook.

[3] For ease of reading, the message was edited for spelling and grammar.

3

The court permitted NOV to ask Vital about his knowledge of the FMC complaint allegations. The court explained that NOV was entitled to present evidence on its primary defense theory: that some of the plaintiffs "heard about the *FMC* case, learned more about it, and decided that they would use it as a model for this case." (*Id.* at p. 8). The court emphasized that the cross-examination had not, and would not, turn on whether the allegations against FMC in the complaint in that case were true or not. NOV was not "arguing that what was said in the FMC lawsuit about FMC and the conduct at that workplace was false." (*Id.* at p. 9). The only relevant questions were Vital's "familiarity with the allegations" in the *FMC* case. (*Id.* at p. 12). Depending on the nature and the extent of the impeachment, the court noted that, on redirect, the plaintiffs could "respond by asking questions about [Vital's] familiarity with the differences" between the *FMC* complaint and this case. (*Id.*). The court warned that the impeachment would be allowed only to a limited extent, and that the plaintiffs had been given "a lot of leeway to . . . explain in detail what they heard [and] what people said to them." (*Id.* at p. 13).

Cross-examination resumed. NOV's counsel told Vital: "I want to look at allegations you are making in this case with the allegations that were made in the *FMC* case to see if you are being truthful that you did not know what was alleged in the *FMC* case, okay?" (*Id*. at p. 16–17). Vital was shown the complaint filed in the *FMC* case. The court overruled the plaintiffs' hearsay objection because the complaint was not offered for the truth of what it alleged about FMC. (*Id.* at 17–18). NOV's counsel then asked Vital whether he knew about the specific allegations in the *FMC* complaint, and Vital testified that he was unfamiliar with them. (*Id.* at 17–50).

On redirect, Vital was asked whether he had "any idea at all what the complaints were in the *FMC* lawsuit" and whether he had ever read the *FMC* complaint. (Docket Entry No. 193 at p.

4

40–41). He testified that he had "no idea of any of the complaints from the *FMC* lawsuit" and that he had "never" read the *FMC* complaint. (*Id.*).

### B. Analysis

The plaintiffs argue that admitting the complaint filed in *Bryant v. FMC* was prejudicial error. They contend that the allegations in that complaint were irrelevant, were improperly used to attack counsel's litigation strategy, and were unfairly prejudicial.

"Substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact." *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993). The *FMC* complaint was not offered for the truth of its allegations, but as "[i]mpeachment evidence . . . to discredit a witness to reduce the effectiveness of [his] testimony by bringing forth evidence which explains why the jury should not put faith in [his] . . . testimony." *Id.* (alterations omitted) (quotation marks omitted). "[W]hether offered for substantive or impeachment purposes, the [evidence] must be relevant, and [its] probative value must not be substantially outweighed by the danger of unfair prejudice." *United States v. Jimenez*, 256 F.3d 330, 343 n.14 (5th Cir. 2001).

The plaintiffs argue that the *FMC* complaint was not relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Abel*, 469 U.S. 45, 50–51 (1984); FED. R. EVID. 401. NOV's defense was that the allegations in this case were fabricated. Vital's message to Jiles referred to the *FMC* case and outcome, providing evidence that Vital knew about the case, its facts, and its success, contrary to his testimony. That message, together with the similarities between the *FMC* complaint and the complaint in this case, was probative of whether Vital patterned the allegations he and others made in this case after those in

the *FMC* case. Vital and others testified that the overlapping facts were coincidental. His lawyers elicited this testimony and argued that cases of this sort inevitably involve similar fact patterns, including allegations of commonly used racial slurs, racist graffiti, and displays of racist symbols such as nooses.

The *FMC* complaint was relevant to impeach Vital's testimony that he "knew nothing about" the *FMC* case and important to NOV's defense theory that Vital and other plaintiffs had based their complaint allegations on what happened at FMC, not at NOV. Vital consistently testified on direct, redirect, and cross-examination that he was unaware of the alleged facts in the *FMC* case. It was up to the jury to decide the extent to which Vital's testimony was worthy of belief. The *FMC* complaint was relevant impeachment evidence, and there was no prejudicial error in its admission.

The plaintiffs argue that this cross-examination held them responsible for their lawyers' litigation strategy. The record does not show that the cross-examination attacked the strategy in this case or the *FMC* case. The cross-examination focused on Vital's knowledge of the *FMC* complaint. The plaintiffs were provided and took ample time and opportunity to show that Vital and others based their claims against NOV on what happened to them at NOV, not on similar harassment others suffered at FMC. The plaintiffs have not shown prejudicial error.

The plaintiffs also contend that questions about the *FMC* complaint were unfairly prejudicial. They do not explain why, other than to reiterate that the case was irrelevant and an attack on the lawyers' litigation strategy. To the extent the motion raises a separate argument under Rule 403, the record does not show that the unfair prejudice substantially outweighed the probative value. The plaintiffs concede that "one of the defenses NOV asserted was that the [plaintiffs] had manufactured or falsified their claims of race harassment." (Docket Entry No. 206 at p. 14). NOV was entitled

6

to present its theory of defense with relevant evidence, including impeachment evidence. The strength of that theory was for the jury to decide. The plaintiffs did not request additional instructions. Admitting allegations from the complaint as impeachment evidence did not violate Rule 403.

## III.     The Plaintiffs' First Amended Complaint

The plaintiffs argue that it was prejudicial error to admit as impeachment evidence portions of their first amended complaint in this case. NOV's use of the first amended complaint for impeachment purposes was relevant to its defense theory that the plaintiffs fabricated the discrimination and harassment allegations. For example, during the cross-examination of Jerome Johnson, NOV sought to impeach Johnson using the allegation in the complaint that human-resources manager Samantha Slack "refused to address or discuss [his] concerns regarding the hostile work environment." (Docket Entry No. 194 at p. 106–07). Johnson was asked, "That's not true. That's a lie, right?" When Johnson responded, "No," NOV questioned Johnson about email exchanges between him and Slack that had been admitted into evidence showing Slack's specific responses to Johnson's concerns. (*Id.* at p. 107–14).

NOV's use of the pleadings as impeachment evidence did not introduce prejudicial error. The plaintiffs have not cited a case finding that a district court abused its discretion by permitting defense counsel to use the plaintiff's live filed complaint to impeach that plaintiff's trial testimony. In the Fifth Circuit, "[a]s a general rule the pleading of a party made in another action, as well as pleadings in the same action which have been superseded by amendment, withdrawn or dismissed, are admissible as admissions of the pleading party to the facts alleged therein, assuming of course that the usual tests of relevancy are met." *Continental Ins. Co. v. Sherman*, 439 F.2d 1294, 1298

7

(5th Cir. 1971). This rule encompasses the damages sought. *Sanford v. Johns-Manville Sales Corp.*, 923 F.2d 1142, 1148 (5th Cir. 1991) ("The jury has a right to know what a party seeks in his complaint if the information is relevant."). Other circuits allow the pleadings to be used for impeachment. *See, e.g.*, *Easley v. Empire, Inc.*, 757 F.2d 923, 928 n.5 (8th Cir. 1985) ("Factual assertions in pleadings . . . may be taken in evidence as admissions of parties and may be used for substantive purposes or for impeachment."); *Frank v. Bloom*, 634 F.2d 1245, 1251 (10th Cir. 1980) ("The factual matter contained in the pleadings is admissible as an admission by a party made by his agent acting within the scope of his employment. Such evidence is admissible for substantive purposes, and need not be received solely for impeachment purposes.").

The plaintiffs argue that the complaint was a judicial admission and cannot be treated as an evidentiary admission. "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Id.* An example of a judicial admission is a statement by an attorney during a deposition that his client was "waiving all claims of physical injury." *Id.* at 477. "A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party." *Id.* (quotation marks omitted).

The record does not show that the first amended complaint was improperly used as a judicial admission. NOV did not treat the allegations as conclusive or as formal concessions or stipulations, but as evidentiary admissions used for purposes of impeachment. The case law supports that approach. *Continental Ins.*, 439 F.2d at 1298 (characterizing the pleading as an "admission," not

8

a "judicial admission"); *Easley*, 757 F.2d at 928 n.5 (same); *Frank*, 634 F.2d at 1251 (same); *see generally* 2 MCCORMICK ON EVIDENCE § 254 (7th ed. 2013) ("When the term admission is used without any qualifying adjective, the customary meaning is an evidentiary admission, that is, words in oral or written form or conduct of a party or a representative offered in evidence against the party.").

The plaintiffs argue that admitting the first amended complaint was "founded upon a false premise that the [complaint] NOV used to impeach [the plaintiffs'] testimony embodied sworn testimony." (Docket Entry No. 206 at p. 24). The plaintiffs have not pointed to, and the court has not found, any place in the record where an attorney asserted or implied that the first amended complaint was "sworn testimony." Federal Rule of Civil Procedure 11 provides no support. FED. R. CIV. P. 11(a) ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit.").

The defendants' use of the first amended complaint is not a basis for the relief they seek under Rule 59.

**IV.   The EEOC Administrative Complaints**

The plaintiffs argue that NOV's use of their EEOC administrative complaints as impeachment evidence was "inappropriate." The plaintiffs themselves submitted their EEOC charges as exhibits. They were admitted without objection. (Docket Entry No. 135, Exs. 33, 36, 55, 66, 68, 100, 133). Even assuming that it was error to admit them, the plaintiffs cannot now complain about an error they introduced. *See, e.g.*, *Munoz v. State Farm Lloyds of Texas*, 522 F.3d 568, 573 (5th Cir. 2008).

Invited error aside, the plaintiffs do not argue that the questions about the forms were either

9

irrelevant or unfairly prejudicial. NOV used the EEOC charges to attempt to impeach the plaintiffs' credibility by showing that they had changed their factual allegations. These questions were relevant to the defense theory that the allegations were fabricated. For example, during Damon Darby's cross-examination, NOV asked him about the allegation in his EEOC charge that "[o]ver the course of my employment, I had repeatedly heard both employees and supervisors use the word 'nigga.'" (Docket Entry No. 173 at p. 24). NOV asked, "That's just not true, is it?" Darby responded, "I heard them use racial terms, one supervisor, but never 'nigger,' just blatant 'nigger.'" (*Id.*). As another example, Jerome Johnson was asked about his allegation in the lawsuit that he had heard about a noose in the NOV workplace. That allegation was not in his EEOC charge. "[Y]our explanation for why you did not mention the noose in this EEOC charge is there wasn't enough room to write it in, right?" (Docket Entry No. 194 at p. 146). Johnson responded, "That is correct. I need more paperwork to write all the things that happened, a lot of things that happened." (*Id.*).

Prior inconsistent statements are a valid form of impeachment. FED. R. EVID. 613, 801(d)(2). "[I]f the prior statement omits a material fact presently testified to and it would have been natural to mention that fact in the prior statement, the statement is sufficiently inconsistent." 2 MCCORMICK ON EVIDENCE § 34; *cf. Jenkins v. Anderson*, 447 U.S. 231, 239 (1980) ("Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted."). The record shows that the EEOC complaints were relevant, appropriate impeachment evidence.

The plaintiffs cite Fifth Circuit case law holding that "the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow,"

10

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970), but that "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). These cases involve the exhaustion of administrative remedies in Title VII cases and do not hold that an EEOC charge, introduced into evidence by the plaintiffs themselves, is an "inappropriate" basis for impeaching the testimony of those plaintiffs with their prior inconsistent statements. There is no prejudicial error that provides a basis for relief under Rule 59.

## V.     The *Limine* Orders

The plaintiffs argue that NOV's "repeated" breach of *limine* orders introduced prejudicial error. "To warrant a new trial the defense counsel's misconduct in the form of improper questioning must be so pronounced and persistent that it permeates the entire proceeding." *Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 473 (5th Cir. 1991).

NOV concedes that it violated Limine Order No. 2 when it asked Billy Rose about his fee arrangement with plaintiffs' counsel. (Docket Entry No. 204 at p. 7–8). The plaintiffs objected, the court sustained the objection, and counsel for NOV proceeded to cross-examine Rose on a different topic. (Docket Entry No. 186 at p. 79). No prejudicial error justifying Rule 59 relief is present.

The plaintiffs allege violations of Limine Order No. 3 and No. 4, which prohibited such statements as "the plaintiffs are in this for the money" and references to "lawsuit abuse." (Docket Entry No. 112). The court granted these motions on the understanding that they would exclude "an *ad hominem* statement that is untethered to any evidence," but would not exclude questions about the amount of damages the plaintiffs sought. (Docket Entry No. 130 at p. 8–9). The record does not show that these *limine* orders were violated or that any violation was prejudicial error.

11

The plaintiffs also allege violations of Limine Order No. 20, precluding references to how NOV's financial condition might be affected by the lawsuit, and Nos. 21 and 22, precluding references to claims that were dismissed in the case. The plaintiffs have not cited, and the court has not found, objections on these grounds during the trial. To the extent the *limine* orders were violated, the record does not show that the violations were "so pronounced and persistent that [they] permeate[d] the entire proceeding." *Winter*, 926 F.2d at 473.

The plaintiffs contend that NOV introduced prejudicial error by breaching a *limine* order it requested to prohibit references to the geographic location of the lawyers and law firms involved in the case. (Docket Entry No. 109 at p. 2; Docket Entry No. 130 at p. 33). The record shows that plaintiffs' counsel, the plaintiffs, and the plaintiffs' witnesses all referred to the fact that the Alioto law firm and the lawyers who tried the case are based in San Francisco, California. (Docket Entry No. 172 at p. 112; Docket Entry No. 179 at p. 38; Docket Entry No. 196 at p. 53). Any violation by NOV was harmless. There is no prejudicial error for relief under Rule 59.

## VI.     Attorney Misconduct

The plaintiffs argue that attorney misconduct by counsel for NOV merits a new trial. "When counsel for either party makes an improper statement during trial, [the question is] whether the remark impaired a substantial right of the objecting party." *Winter*, 926 F.2d at 473. "To warrant a new trial the defense counsel's misconduct in the form of improper questioning must be so pronounced and persistent that it permeates the entire proceeding." *Id.*

The plaintiffs' attorney-misconduct allegations lack factual and legal support. The plaintiffs object to NOV's vigorous cross-examination of their expert witness, Dr. Kenneth Lehrer. (Docket Entry No. 179 at p. 32–50). The record shows a heated exchange between counsel for NOV and Dr.

12

Lehrer, but it does not show attorney misconduct. Dr. Lehrer made disparaging, racially charged, *ad hominem* attacks against a federal judge who, as a state-court judge, disqualified him as an expert witness. Counsel's response to Dr. Lehrer's testimony was well within the bounds of professional conduct. There are limits to robust advocacy, but those limits were not exceeded here except by Dr. Lehrer himself.

The plaintiffs also allege attorney misconduct and violations of *limine* orders during the closing argument. The plaintiffs did not object during closing. The argument is waived. *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988); *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 666–67 (5th Cir. 1967).

The plaintiffs have also submitted an affidavit alleging posttrial attorney misconduct. (Docket Entry No. 206, Ex. 2). NOV has responded. (Docket Entry No. 207, Ex. F). The affidavit largely repeats the arguments made in the new-trial motions. The record does not show a factual basis for the remaining allegations, and they do not provide a secure basis for a new trial.

The plaintiffs have not shown "improper questioning . . . so pronounced and persistent that it permeate[d] the entire proceeding," *Winter*, 926 F.2d at 473, or improper argument, that provides a basis for the relief they seek.

## VII. Conclusion

The plaintiffs' new-trial motions are denied. (Docket Entry Nos. 199, 206). The plaintiffs' motion to vacate the October 6, 2015 minute entry is dismissed as moot. (Docket Entry No. 188).

SIGNED on November 30, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge